Minoui HOSSEIN, Plaintiff,

v.

UNITED STATES of America, Pan American World Airways, Inc. and Dara Zargar, Defendants.

No. 78 Civ. 1649 (KTD).

United States District Court, S. D. New York.

June 18, 1979.

Haight, Gardner, Poor & Havens, New York City, for defendant Pan American World Airways, Inc.; Einar M. Rod, New York City, of counsel.

Robert C. Ross, New York City, for defendant Dara Zargar.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This action was commenced by plaintiff, Minoui Hossein, a French National, against the United States,[1] Pan American Airways, Inc. [hereinafter referred to as "Pan Am"], and Dara Zargar, to recover damages for the loss of certain personal property transported by Pan Am from Paris, France to New York, New York on April 30, 1976. The property in issue was a carved head representing a Hindi Shahi King and was made from a precious stone known as Lapis Lazuli Specs [hereinafter referred to as "the Lapis Lazuli" or "the Head"].

The relevant facts are as follows. On April 30, 1976, the Lapis Lazuli was transported on one of Pan Am's flights from Paris to New York. The Head was in the possession of plaintiff's agent, Dara Zargar, who was to negotiate a sale of the head in New York. Upon his arrival Zargar presented the Lapis Lazuli to customs for entry into the United States. However, the customs inspectors determined that before being admitted into the country, the Head should be evaluated by an import specialist. Thus, pursuant to custom procedures, the Head was given to the carrier, Pan Am, for storage until such time that an evaluation could be obtained. Unfortunately, when plaintiff demanded the return of the Head from Pan Am it was nowhere to be found.

1. The action was discontinued with prejudice as against the United States on February 5, 1979.

Nine months after the apparent theft of the Head, and only four days after being named as a defendant herein, Zargar miraculously "ransomed" the Head for the sum of $9,000. Two months after its recovery, Zargar went to Iran where he purchased the Head (previously valued at $250,000) for $62,500.

This, however, is only part of the tangled web woven by Messrs. Hossein and Zargar. The story continues. On June 16, 1978, Pan Am served upon the plaintiff its answer together with a set of interrogatories. Thereafter, despite Pan Am's numerous attempts to compel responses to these interrogatories they remained unanswered. Finally, in November, 1978, Pan Am moved, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to dismiss the complaint because of plaintiff's failure to respond to its interrogatories. Zargar then cross-moved for a protective order which sought to "preserve and protect the identity of the person or persons responsible for the loss of the Head" until the trial. The plaintiff, Hossein, has never opposed Pan Am's motion to dismiss his complaint nor has he responded to Zargar's cross-motion.

In an effort to resolve Pan Am's discovery problems without resorting to the drastic remedy of a dismissal, I scheduled a pretrial conference in November, 1978 and invited all parties to attend. While Pan Am and Zargar were present, the plaintiff failed to appear. At the conference, however, Zargar represented to the Court that in purchasing the Lapis Lazuli in June, 1978, he had also purchased the underlying cause of action against Pan Am. He further represented that plaintiff would substitute Zargar's attorneys as his own and formally assign the instant claim to Zargar and thereby in effect re-align the parties so that Zargar would be the plaintiff herein.

It should be noted that no formal motion to amend the complaint was ever made and consequently it remains as originally filed with the parties in their original posture.

The events as they pertain to the assignment and substitution of attorneys are as follows:

(1) May 4, 1978—Zargar filed an appearance and retained the firm of Roth & Bucholz as counsel;

(2) November 29, 1978—A substitution of attorneys whereby the firm of Roth & Bucholz was purportedly substituted for the firm of Dweck & Sladkus as Hossein's counsel of record. The stipulation of substitution, however, was never signed by the plaintiff Hossein. Rather, it was executed in his name "by Dara Zargar, as assignee." It was also signed by representatives of Roth & Bucholz and Dweck & Sladkus;

(3) January 15, 1979—A substitution of attorneys whereby Robert C. Ross was purportedly substituted for Hossein's former "attorneys of record," Roth & Bucholz. Again, however, the stipulation of substitution was not signed by the plaintiff Hossein. Rather it was executed in the name of Minoui Hossein "by Dara Zargar, as assignee." The stipulation was signed by a representative of Roth & Bucholz and by Robert Ross;

(4) January 15, 1979—A substitution of attorneys whereby the defendant, Zargar, substituted Robert Ross as his attorney of record in place of Roth & Bucholz.

Zargar reasons that pursuant to an assignment executed by Hossein, dated June 18, 1978, whereby Hossein purportedly assigned to Zargar all his right, title and interest in the Lapis Lazuli, the above substitutions were valid. In addition, Zargar urges that by virtue of said assignment he is in fact the owner of whatever claim Hossein had against Pan Am arising out of the "theft" of the Head. He concludes, therefore, that he is for all intent and purposes the plaintiff herein and since he has responded to Pan Am's interrogatories, its motion to dismiss should be denied.

The assignment which serves as the linchpin in Zargar's twisted logic is unfortunately not written in the English language. Presumably it is written in Arabic. Zargar, however, has failed to supply this Court with either an exemplified or certified translation of the assignment. Nor has he offered one iota of evidence that the writ-

ing is in fact authentic. Instead, Zargar has submitted a photostatic copy of what could very well be Arabic scribblings together with a photostatic copy of an "unofficial" English translation of the Arabic assignment.

There is no doubt that the interrogatories served by Pan Am upon Hossein fully comported with established rules of discovery. See Rule 33(a) Fed.R.Civ.P. It follows therefore, that Pan Am was entitled to have the party served with these interrogatories respond thereto. They need not be satisfied with the answers supplied by a co-defendant.

I find Zargar's attempts to bootstrap himself into the posture of the plaintiff through a contorted maze of assignments and substitutions to be legally deficient. Accordingly, his response to Pan Am's interrogatories is a nullity insofar as Pan Am's motion is concerned.[2] Moreover, it would appear that the plaintiff has no intention of responding to Pan Am's interrogatories nor in prosecuting this action. Indeed, plaintiff failed to appear at the November pretrial conference and has even failed to respond to the instant motion to dismiss his complaint. The only opposition to Pan Am's motion is that filed by the defendant Zargar. While dismissal is indeed a drastic remedy for the failure to comply with discovery rules, where a party's conduct, as in the instant case, constitutes a willful and persistent disregard of these rules, dismissal is mandated. Thus, I am left with no alternative but to dismiss plaintiff's complaint. Moreover, in light of the questionable conduct of Minoui Hossein and Dara Zargar, I find this an appropriate case in which to award to Pan Am costs and reasonable attorney's fees incurred by it in bringing the instant motion. Rule 37 Fed. R.Civ.P.

Since no motion has been made with respect to the cross-claims of Zargar and Pan Am and since these claims appear to have an independent jurisdictional predicate (diversity) they will remain.

Finally, I find no merit in Zargar's motion for a protective order. Pan Am is entitled to the information in issue.

Accordingly, Pan Am's motion to dismiss the complaint of Minoui Hossein is granted with costs and attorney's fees and Zargar's motion for a protective order is denied.

SO ORDERED.

---

2. Even assuming the assignment is what it purports to be, there is no "claim" which Hossein could assign to Zargar. It is clear from plaintiff's complaint that he sought the return of the Head. Since the Head was returned to him, apparently undamaged, the plaintiff has been made whole and his claim thereby dissolved. The only person who is out of pocket is Zargar who allegedly paid $9,000 for the return of the Head. There is no indication that Zargar ever recovered this amount from Hossein. Indeed, since Zargar was Hossein's agent and in constructive possession of the Head when it was stolen, he was liable to Hossein for its value. Thus, any sums expended by him to recover the Head went solely to mitigate his own exposure and did not thereby give Hossein a claim.

Suffice it to say that if Zargar were out of pocket for recovery of the Head, this was his claim and not that of Hossein.